IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH SMITH, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ALLEGHENY TECHNOLOGIES, INC. and STROM ENGINEERING CORPORATION, | ) ) ) ) | Electronically Filed |
| Defendants. | ) ) | |

## NOTICE OF REMOVAL

Defendant Allegheny Technologies Incorporated ("ATI") hereby gives notice of the removal of these proceedings from the Court of Common Pleas of Allegheny County, Pennsylvania to the United States District Court for the Western District of Pennsylvania, and in support thereof states as follows.

1. On or about February 7, 2019, Defendant received notice that a Verified Class Action Complaint ("Complaint") had been filed by Plaintiff Ralph Smith ("Plaintiff") in the Court of Common Pleas of Allegheny County, Pennsylvania, at Case No. GD-19-001929. A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit 1. The Complaint has not yet been served on ATI.

2. The Complaint purports to be a class action complaint and to assert class action claims on behalf of Plaintiff and a putative class of allegedly similarly situated individuals.

3.      No other pleadings or discovery has been served or filed in this action since the date that ATI received notice of the Complaint, nor has any court order been entered. A true and correct copy of the docket sheet is attached hereto as Exhibit 2.

4.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1453 because this matter is a class action, because none of the exceptions in Section 1453 apply, and because the procedures for removal set forth in 28 U.S.C. § 1446 have been followed.

5.      Additionally, and independent from the jurisdiction conferred on this Court by 28 U.S.C. § 1453, this Court also has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists among Plaintiff, ATI, and Defendant Strom Engineering Corporation ("Strom"), and the substantive allegations in Plaintiff's Complaint demonstrate that the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  In support of that proposition, Defendant relies on the allegations in Plaintiff's Complaint, which provide as follows:

a.      Plaintiff is a resident and citizen of North Carolina.  Complaint ¶ 4.  ATI is a corporation organized under the laws of the State of Delaware and has its principal place of business in Pennsylvania.  Complaint ¶ 5.  Accordingly, ATI is a citizen of Delaware and Pennsylvania.  *See* 28 U.S.C. § 1332(c)(1).  Strom is a corporation organized under the laws of the State of Minnesota and has its principal place of business in Minnesota.  Complaint ¶ 6.  Accordingly, Strom is a citizen of Minnesota.  *See* 28 U.S.C. § 1332(c)(1).  As a result, there is diversity of citizenship among Plaintiff, ATI, and Strom.

b.    Plaintiff's Complaint does not identify a specific dollar amount of claimed damages.  Nevertheless, Plaintiff explicitly alleges the following, from which the amount in controversy can be ascertained:

1.)    Plaintiff and the proposed class members were members of a replacement workforce hired by Strom to replace ATI's unionized employees from the United Steelworkers union ("USW") during a lockout that lasted from August 15, 2015 through March 6, 2016.  Complaint ¶ 7.

2.)    The lockout affected more than 2,200 USW employees at 12 ATI facilities.  Complaint ¶ 32.  Of those 12 affected facilities, 8 facilities were located in Pennsylvania and are at issue in this litigation.  *Id.*  Given that 2/3 of the affected facilities were located in Pennsylvania (i.e., 8 of 12 facilities), approximately 2/3 of the 2,200 affected USW employees were located in those 8 affected Pennsylvania facilities.  In other words, approximately 1,467 USW employees were affected by the lockout at ATI's 8 Pennsylvania facilities.[1]  *Id.*

3.)    Plaintiff and the proposed class members, therefore, were the temporary workforce hired by Strom to replace those 1,467 employees. Even if there was not a one-to-one correlation between the affected USW employees and the temporary workers hired to replace them during the lockout, a reasonable

---

[1]  The approximation in the text assumes that all ATI facilities employed roughly the same number of USW employees.  In reality, ATI's facilities in Pennsylvania, being among its larger facilities, employed on average more USW employees than its facilities in the other states and, as a result, **more than** 1,467 USW were affected by the lockout at ATI's 8 Pennsylvania facilities. Because that fact is not apparent from the allegations in the Complaint, and because it is not necessary for this Notice of Removal, ATI's Notice of Removal relies upon the approximation stated in the text, which is based on Plaintiff's allegations in the Complaint.

estimate based on Plaintiff's allegations is that approximately 1,000 temporary workers constitute the proposed class in this litigation. *E.g.*, Complaint ¶ 7.

4.)    In this litigation, Plaintiff claims that, during the lockout, the time he and the proposed class members spent commuting from their hotels to the ATI facilities, and from the ATI facilities to their hotels, constitutes "work" for which they should have been compensated, but were not. Plaintiff seeks, on behalf of himself and all proposed class members, compensation for that commuting time. *E.g.*, Complaint ¶ 86. Plaintiff alleges that that alleged uncompensated "work" of commuting amounted to between 7 and 17.5 hours per week. Complaint ¶ 76. Taking the midpoint of that alleged range (i.e., 12.25 hours per week) as the average weekly unpaid hours of Plaintiff and the proposed class members, that yields an average of 12.25 hours of unpaid "work" for Plaintiff and each of the proposed class members during the lockout.

5.)    Plaintiff claims that he and the proposed class members worked 12 hours per day, 7 days per week at the ATI facilities. Complaint ¶ 57. Thus, because Plaintiff and the proposed class members allegedly worked for more than 40 hours per week in the facilities, the compensation that Plaintiff seeks for himself and the proposed class members for commuting to and from work would have been hours of work in excess of 40 in a workweek, and accordingly that compensation would be at the overtime rate of 1.5 times their regular rate of pay. *E.g.*, Complaint ¶ 108.

6.)    Plaintiff and the proposed class members were paid "high hourly wages." Complaint ¶ 113. Specifically, Plaintiff alleges that he and the

proposed class members were paid between $1,700 and $3,000 per week. Complaint ¶ 50 (embedded Craigslist advertisement). Taking the midpoint of that alleged range (i.e., $2,350 per week) as the average weekly wages of Plaintiff and the proposed class members, and given Plaintiff's allegation that he and the proposed class members worked in the facilities 12 hours a day and 7 days per week, that is, 84 hours per week, *e.g.*, Complaint ¶ 57, that yields an average hourly rate of $27.98 per hour for Plaintiff and the proposed class members. *E.g.*, Complaint ¶¶ 50, 57.

7.)     There were 29 weeks from August 15, 2015 through March 6, 2016.

8.)     Based on Plaintiff's allegations, therefore, the amount that Plaintiff seeks in damages in the form of compensation for commuting to and from work is the following: 12.25 hours per week X $27.98 per hour X 29 weeks X 1.5 to account for it being overtime compensation X 1,000 members in the proposed class = **$14,909,842.50.**

9.)     Even if there are only 800 proposed class members, the amount that Plaintiff seeks in damages in the form of compensation for commuting to and from work is still $11,927,874. Further, even with only 800 proposed class members, even if the average proposed class member worked only 15 weeks of the lockout, the amount that Plaintiff seeks in damages in the form of compensation for commuting to and from work is still $6,169,590.

10.)     Thus, even under unduly conservative estimates, Plaintiff's allegations show that the amount in controversy in this matter, even considering just the amount that Plaintiff seeks in damages in the form of

compensation for commuting to and from work, exceeds $5,000,000, exclusive of interest and costs.

11.)    Plaintiff, however, seeks more in damages that just compensation for commuting to and from work.  In particular, Plaintiff also seeks to recover alleged unjust enrichment to ATI and Strom in the form of the "earnings and profits" that they allegedly received as a result of their alleged conduct, including all of Strom's profits from the business relationship between it and ATI, the savings that ATI allegedly received as a result of its arrangement with Strom, ATI's alleged reduced overhead labor costs, alleged savings resulting from changes in ATI's retirement benefit programs, and alleged improvements to ATI's cost competitiveness resulting from its labor negotiations with the USW and the lockout, all of which Plaintiff alleges amounts to **<u>millions of dollars,</u>** as well as "additional earnings and profits" beyond those millions of dollars.  Complaint ¶ 35, 113, 115.

12.)    Plaintiff also seeks liquidated damages "to the fullest extent permitted under the law."  Complaint, Prayer for Relief (c).

13.)    Plaintiff also seeks attorneys' fees "to the fullest extent permitted under the law."  Complaint, Prayer for Relief (d).

14.)    Thus, the amount in controversy in this matter exceeds $5,000,000, exclusive of interests and costs.  Further, it is not a legal certainty that Plaintiff cannot recover that jurisdictional amount.

6.    As a result of the foregoing, removal is authorized by 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453, on the basis of diversity jurisdiction.

7.     No exceptions to diversity jurisdiction apply, including, even if they were to be considered, which, for purposes of 28 U.S.C. § 1453, they cannot be, any exceptions found in 28 U.S.C. § 1332(d)(3) or (d)(4).  In particular:

a.     Plaintiff alleges that he is similarly situated to the proposed class.  Plaintiff alleges that he is a resident and citizen of North Carolina.  Plaintiff also alleges that the members of the proposed class were residents and citizens of different "geographic areas" who, as he was, were "brought in" and "housed at local hotels and motels away from their families" during the lockout.  Complaint ¶ 45.  Indeed, Plaintiff's theory is based on the members of the proposed class being residents and citizens of far-away places, which allegedly necessitated their being accommodated by Strom in local hotels and motels,which rendered them unable to form any stable or consistent connections with other workers, and which placed in them in a "uniquely precarious position" and made them "extremely vulnerable."  Complaint ¶¶ 17-20, 44-45.

b.     Plaintiff's allegations do not establish that "greater than one third" of the members of the proposed class are citizens of Pennsylvania (*see* 28 U.S.C. § 1332(d)(3)), nor do they establish that "greater than two-thirds" of the members of the proposed class are citizens of Pennsylvania (*see* 28 U.S.C. § 1332(d)(4)(A)(i)(I)).  To the contrary, Plaintiff's allegations establish that Plaintiff and the members of the proposed class were not citizens of Pennsylvania, but of other far-away states, and that few, if any, members of the proposed class were citizens of Pennsylvania.  The allegations do not establish than even 1/3 of the members of the proposed class were citizens of Pennsylvania.  Thus, the

exceptions in 28 U.S.C. § 1332(d)(3) and (d)(4) do not apply.  In other words, the Court is not mandated to decline jurisdiction, and the Court does not have discretion to decline jurisdiction.

        c.     Moreover, it is not the case that, "during the 3-year period preceding the filing of [this] class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."  28 U.S.C. § 1332(d)(4)(A)(ii).  To the contrary, this litigation is the third litigation filed against ATI and Strom concerning the same or similar factual allegations, all three of which class actions have been filed by the same counsel, and two of which class actions have been filed by Plaintiff.  *See De la Torre v. Allegheny Technologies Incorporated, et al.*, No. 16-1072 (W.D. Pa. 2016) (Hornak, J.); *Smith v. Allegheny Technologies Incorporated, et al.*, No. 17-911 (W.D. Pa. 2017) (Hornak, J.).  Thus, the exceptions in 28 U.S.C. § 1332(d)(3) and (d)(4) do not apply.  In other words, the Court is not mandated to decline jurisdiction, and the Court does not have discretion to decline jurisdiction.

        d.     For the foregoing reasons, no exceptions to removal apply.

    8.    This Notice of Removal is filed within 30 days after receipt by ATI of a copy of the initial pleading setting forth Plaintiff's claims for relief.  Therefore, the Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

    9.    Venue is proper in this Court.  This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, it is

the proper district court to which this case should be removed. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

10.    A copy of this Notice of Removal and a Notice to State Court of Removal are being served upon Plaintiff and will be filed with the Clerk of the Court of Common Pleas of Allegheny County, Pennsylvania promptly after the filing of this Notice of Removal with this Court, in accordance with the provisions of 28 U.S.C. § 1446(d).

WHEREFORE, ATI gives notice that the above action filed in the Court of Common Pleas of Allegheny County, Pennsylvania is removed therefrom to this Court, and respectfully requests that this action be entered into the docket of this Court for further proceedings as if the action had originally been instituted in this Court.

Respectfully submitted,

s/ David J. Kolesar
David J. Kolesar (PA70439)
Ali J. Parker (PA318607)
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
Tel:  412-355-6500
Fax:  412-355-6501
Email:  david.kolesar@klgates.com
Email:  ali.parker@klgates.com

Counsel for Defendant
Dated:  February 8, 2019                    Allegheny Technologies Incorporated

## CERTIFICATE OF SERVICE

I certify that, on February 8, 2019, the foregoing document was served on counsel for Plaintiff by placing said document in the United States Mail, first-class postage prepaid, and addressed as follows, and also by sending said document by electronic mail to the following email addresses:

Joseph H. Chivers, Esquire
The Employment Rights Group
100 First Avenue, Suite 650
Pittsburgh, Pennsylvania  15222
jchivers@employmentrightsgroup.com

Shanon J. Carson, Esquire
Sarah R. Schalman-Bergen, Esquire
Michaela Wallin, Esquire
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
scarson@bm.net
sschalman-bergen@bm.net
mwallin@bm.net

Michael K. Yarnoff, Esquire
Kehoe Law Firm
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1020
Philadelphia, Pennsylvania 19102
myarnoff@kehoelawfirm.com

s/ David J. Kolesar