IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH SMITH, individually and on behalf of all persons similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>STROM ENGINEERING CORPORATION,<br><br>　　　　　　Defendant. | Civil Action No. 2:19-cv-00147-MRH-PLD<br><br>Electronically Filed |

**DEFENDANT'S BRIEF IN SUPPORT OF OBJECTIONS TO
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendant Strom Engineering Corporation ("Strom") submits the following Brief in support of its Objections to the Report and Recommendation of Magistrate Judge Patricia L. Dodge on Plaintiff Ralph Smith's Motion for Class Certification (Dkt. No. 94, the "R&R").

**I.　INTRODUCTION**

As set forth in Strom's Opposition to Plaintiff's Motion for Class Certification (the "Opposition") (Dkt. No. 73), Smith's Motion for Class Certification and supporting brief (Dkt. Nos. 67, 69) fail to meet Smith's burden to show that class certification is appropriate on his claims under the Pennsylvania Minimum Wage Act ("PMWA"). The R&R lacks the "rigorous analysis" required for review of such motions, and does not provide an adequate legal basis for the recommendation that Smith's Motion be granted. As such, the R&R's recommendation is clearly erroneous.

Specifically, the R&R incorrectly concludes that Smith has met his burden on all elements required for class certification under Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, and fails to the credit the significant factual disparities between Smith's position, job duties,

experiences, and agreement to work for Strom on the ATI project and positions, job duties, experiences, and agreements to work of the putative class members.

As to the element of commonality required by Fed. R. Civ. P. 23(a), Smith must show by a preponderance of the evidence that the relevant legal questions can be answered by common evidence, and because the evidence Strom identified shows that Smith's experience with respect to both the duties he agreed to perform and receive compensation for and the hours he worked is not common to the entirety of the putative class, he cannot establish commonality sufficient to certify the putative class as required by Fed. R. Civ. P. 23(a).

With respect to the element of typicality under Fed. R. Civ. P. 23(a), Smith failed to show that his claims are factually typical of the putative class members, and the R&R's reliance on an unsupported "de facto requirement that replacement workers travel to and from the worksite in the supplied transportation" is clearly erroneous.

Regarding the elements of predominance and superiority under Fed. R. Civ. P. 23(b), the R&R similarly fails to recognize that the evidence needed to show that Smith's duties meet either prong of the test for compensable travel time under the PMWA is not the same evidence that would be needed to prove the claims of other replacement workers. Therefore, Smith is unable to present common evidence that sufficiently predominates over individualized facts regarding this prong of the test under the PMWA required to satisfy 23(b)(3), and Smith has not met his burden to show that class treatment is a superior method of adjudication of the claims of the uninterested class members.

**II.    LEGAL STANDARD**

This Court reviews those portions of the Magistrate Judge's Report and Recommendation to which objection is made and may set aside any portion of the Magistrate Judge's order found to

be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A), (C); F.R.C.P. 72(a); LCvR 72(C).

### III.   ARGUMENT

**A.   The R&R fails to perform or apply the "rigorous analysis" required of courts in the Third Circuit.**

The R&R correctly states that each element of the test for class certification under Fed. R. Civ. P. 23 must be "'satis[fied] through evidentiary proof' after a 'rigorous analysis.'" R&R, pp. 8-9 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). However, despite acknowledging the critical legal standard at the outset, the R&R fails to apply the required "rigorous analysis" to any of the four elements contested by Strom that Smith must establish by a preponderance of the evidence for the putative class to be certified. *Haggart v. Endogastric Sols., Inc.,* No. CIV.A. 10-346, 2012 WL 2513494, at *2 (W.D. Pa. June 28, 2012) (citing *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 320 (3d Cir. 2008), *as amended* (Jan. 16, 2009)).

**1.   Smith has not met his burden to show that there are shared factual or legal issues, thus he cannot establish the element of commonality under Fed. R. Civ. P. 23(a).**

Rule 23(a)(2) requires "questions of law or fact common to the class" for class certification to be appropriate. This provision ensures that there are shared factual or legal issues among claimants such that it is efficient, fair and sensible to permit a single adjudication of similar claims. A common question is one that, when answered as to one class member, will advance the resolution of the claims of the other members of the putative class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50, (2011) ("That common contention … must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). Importantly, the Supreme Court determined that,

> [w]hat matters to class certification ... is not the raising of common "questions"—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 131–132 (2009) (emphasis in original)).

Here, it is evident that the relevant legal questions cannot be answered on behalf of the entire putative class solely based on Smith's evidence. As Strom sets out in its Opposition and noted by the R&R, there is no written agreement between Strom and any replacement worker stating that travel time would be compensated, Smith cannot point to an agreement that defines his actual job duties as a Crane Operator, all replacement workers were not provided with the same information upon recruitment and hire, nearly half of the putative class had already left Strom's employment on the ATI project by the time the Memorandum Re: Crossing the Picket Line (Dkt. No. 69-3) was created and implemented for use, and replacement workers' experiences varied with respect to their travel to and from the jobsite as a result of individualized decisions made by the putative class members in each respective vehicle and because of the variance of picket line presence between facilities.

Despite the abundance of factual evidence provided by Strom and the dearth of relevant common evidence proffered by Smith, the R&R's analysis on this element consists of only two sentences: "As Smith correctly points out, at issue is whether travel time was part of the replacement workers' duties and occurred during normal working hours. *See Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 186 (3d Cir. 2019). This question is common to each member of the putative class and recovery hinges on its affirmative answer." While it is unclear what facts and information forms the basis for this conclusion in the R&R, it is evident that the R&R ignores the

directive of *Dukes*. Smith's reliance on two documents signed by a portion of the putative class and Strom's policies and practices is not sufficient to generate common answers to the relevant legal questions in this matter, and the R&R provides no basis that Smith has affirmatively demonstrated such answers are feasible through Smith's proposed evidence.

Further, no court has determined that the travel at issue was within the "normal working hours" of the replacement workers, despite both Smith's and the R&R's assertions that such an issue has been conclusively decided in this case. Instead, on Strom's Motion to Dismiss the Complaint, the Court found that Smith's Complaint "**plausibly alleges** that commuting and crossing the picket lines was part of the temporary workers' duties and occurred during their normal working hours." (Dkt. Nos. 19, 26) (emphasis added). The standard on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is wholly different than the standard—and Smith's burden—on a motion for class certification or at trial. *See, e.g., Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

Accordingly, because Smith has not established by a preponderance of the evidence that the relevant legal questions can be answered by common evidence, and because the evidence Strom identified shows that Smith's experiences with respect to the duties he agreed to perform and receive compensation for and the hours he worked are not common to the entirety of the putative class, he cannot establish commonality sufficient to certify a class action on his PMWA claim.

> **2.    Smith has not met his burden to show that his claims are typical of the claims of the putative class, thus he cannot establish the element of typicality under Fed. R. Civ. P. 23(a).**

In assessing whether the claims of a proposed named plaintiff are typical of a putative class, courts in the Third Circuit consider whether:

> (1) the claims of the representative plaintiff are the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009). The R&R relies on incorrect facts in stating that the claims of Smith are typical of those of the putative class, including that all replacement workers traveled to and from the worksite in the supplied transportation. The record belies this misstatement of fact, and not all replacement workers were required to travel to and from their job sites on the Strom-provided transportation for the duration of their employment. *See, e.g.,* Deposition of Chris Waters ("Waters Dep."), 72:2-14; Deposition of Ryan Bash Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Bash Dep."), 263:10-22; Deposition of Jody Ayers ("Ayers Dep."), 205:3-9, 205:12-19.

Moreover, there are more than "slight differences" between Smith's experience and the experiences of the putative class members. As set forth in Strom's Opposition, Smith's individual claims are factually distinct from any purported claims of the putative class members. Smith was one of only 77 replacement workers hired to operate a crane at the Brackenridge facility, yet he seeks to represent over 1,000 other replacement workers across the commonwealth of Pennsylvania, who performed jobs that were dissimilar to his own, and were supervised by Strom and ATI employees who did not supervise or even interact with Smith. Moreover, the presence (or

lack thereof) of the picket lines varied among the ATI facilities, and differed even on a daily basis at any specific facility. *See, e.g.,* Ayers Dep., 237:12-238:9 (stating the number of picketers at the Brackenridge facility changed every day and would range from four or five to ten or fifteen, and that "sometimes you could drive through without them being on the line"); Ayers Dep., 167:7-14 ("… Natrona Heights didn't have a picket line, but there was [sic] union workers up there sitting"); Bash Dep. 68:14-18, 215:2-6 (replacement workers did not necessarily always need to cross a picket line in order to get into and out of their respective facilities).  As a result, Smith cannot rely on the facts underlying his own claim to compensation to prove the claims of the other replacement workers, as his experience was in no way factually the same as the experience of the other replacement workers. The "de facto requirement that replacement workers travel to and from the worksite in the supplied transportation" on which the R&R relies is not supported by the record, and Smith has failed to show that his claims are factually typical of the putative class members. He therefore cannot meet his burden on the element of typicality.

> **3.    Smith has not met his burden to show that common issues of law or fact predominate over non-common, individualized issues, thus he cannot establish the element of predominance under Fed. R. Civ. P. 23(b)(3).**

The R&R's analysis of the predominance element—which essentially consists of a recitation of purported facts in the record—concludes that the PMWA claim is "capable of proof at trial through evidence that is common to the class rather than individual to its members." However, the R&R fails to identify the evidence that it relies on for each element of the PMWA claim or how the purported common evidence can or will predominate over the individualized issues of fact raised by Strom. Instead of reviewing and analyzing the evidence submitted by Strom regarding the individualized purported "employment agreements" entered into by Strom and the replacement workers for the performance of specific duties for each replacement worker's specific job, which clearly varied from individual to individual and from group to group with respect to

7

certain aspects of the agreement (e.g., some replacement workers volunteered to drive a van of other employees to and from the worksite; certain replacement workers were asked to sign a waiver to drive their own vehicle to the jobsite; only a portion of the replacement workers signed the Memo Re: Crossing the Picket Line, etc.), the R&R essentially concludes that, because there is some evidence that is applicable to some members of the putative class, predominance is satisfied. This is insufficient to certify a class on Smith's PMWA claim.

Predominance asks whether common issues of law or fact in the case predominate over non-common, individualized issues of law or fact. *Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 604 (3d Cir. 2012). Smith claims that he is owed compensation under the PWMA for travel time spent commuting to and from ATI's worksites where he performed the job of Crane Operator for Strom. Travel time is compensable under the PMWA if it is (1) "part of the duties of the employee" and (2) occurs "during normal working hours." 34 Pa. Code §231.1(b) (defining "Hours Worked"). A plaintiff must meet **both** the requirements of this two-prong test in order to establish that travel time is compensable under the PMWA. *See, e.g.*, *Espinoza v. Atlas R.R. Constr., LLC*, 657 F. App'x 101, 103 (3d Cir. 2016); *Smith I*, 754 F. App'x 136 (setting forth the two-part test, but only analyzing the first prong where defendant did not argue that the travel time did not occur during "normal working hours").

As set forth in Strom's Opposition, the generic Project Assignment Agreements signed by the replacement workers and the Memo Re: Crossing the Picket Line signed by approximately half of the putative class members, the transportation waiver signed by only a handful of replacement workers, and the Strom-ATI Service Agreement are not class-wide evidence that demonstrate the agreement between any replacement worker and Strom regarding his or her employment or job

8

duties. Indeed, none of those documents describe the duties required of a Crane Operator, or the duties required of any of the hundreds of other jobs performed by replacement workers.

Specific to Smith, he testified that no one at Strom led him to believe that his work on the ATI project would include compensation for travel time. Deposition of Ralph Smith ("Smith Dep."), 21:5-23:8, Ex. 1, 37:25-38:10, 45:8-47:10. Smith identified his job duties as "pressing buttons, operating a crane, lifting materials on to and off of machines, welding, and other repetitive and rote manual labor tasks," in his initial complaint in the first iteration of this lawsuit. *Smith v. Allegheny Techs., Inc.* ("*Smith I*"), 754 F. App'x 136 (3d Cir. 2018), Dkt. No. 1, ¶ 73. Smith also testified that he "typically" worked eighty-four hours per week—*i.e.*, twelve hours per day, seven days per week—at the Brackenridge facility. Smith Dep., 88:9-89:15; 91:1-2. Moreover, there is no evidence that Smith or any other replacement workers performed any work activities, were supervised, or attended work meetings outside of their scheduled shifts, including during their commutes. In fact, replacement workers expressly did *not* perform work during their commutes, and were *not* supervised during their commutes. Deposition of Victoria Wellington ("Wellington Dep."), 92:2-13; Smith Dep., 49:11-50:20.

An evaluation of Smith's job duties requires review of the particularized information he was provided and the specific tasks he performed, and cannot be pared down to generalized agreements regarding ancillary information unrelated to the performance of his job as a Crane Operator. The factual evidence necessary to show that Smith's duties might meet either prong of the test for compensable travel time under the PMWA is not the same evidence that would be needed to prove the claims of other replacement workers. Therefore, Smith is unable to present common evidence that sufficiently predominates over individualized facts regarding this prong of the test under the PMWA required to satisfy 23(b)(3), and the R&R errs in concluding otherwise.

        **4.      Smith has not met his burden to show that class-wide adjudication of the purported claims is a superior method of adjudication, thus he cannot establish the element of superiority under Fed. R. Civ. P. 23(b)(3).**

Finally, the R&R states that "[i]t is also a highly efficient and appropriate use of the administration of justice to handle these claims as a single action rather than conducting 1,000 separate trials requiring largely the same evidence." (Dkt. No 94, p. 19). However, this premise ignores the misstated fact contained in the next sentence—only two other putative class members have commenced an action seeking compensation for travel time to and from their designated worksites.[1]

The R&R's conclusion also fails to credit Strom's argument that the evidence needed to prove each individual's claim is not the "same evidence" needed for any other putative class members' claims, as the legal question of compensability is anchored in the agreement for employment reached between the individual replacement worker and Strom, which is not class-wide evidence. The difficulty in resolving the claims of all putative class members through a class action trial in this matter renders it unsuitable for class certification. The issue before the Court requires an in-depth review of the duties and normal working hours for each individual replacement worker, and the general documents that Smith asserts contain the job duties of the

---

[1] The R&R incorrectly states that "only two other putative class members have commenced an action asserting claims under the PMWA." (Dkt. No. 94, p. 19). However, only one other individual, Johnny De La Torre, has raised a claim for compensation for travel time to and from the ATI worksite for the relevant time period under the PMWA. See First Amended Complaint, *De La Torre v. Allegheny Techs. Inc.,* No. 2:16-cv-01075 at ¶¶31-32 (W.D. Pa. Mar. 14, 2017), Dkt. No. 39. The remaining claimant against Strom, Ignatius Harris, worked for Strom in Oregon and did not bring a PMWA claim against Strom. *See, e.g. Smith I*, 754 F. App'x 136. Moreover, to the extent that Smith claims that additional individuals have notified his counsel that they are interested in pursuing legal action against Strom, none have made any claims against Strom either since learning of this action or during the appropriate time frame when the relevant statute of limitations would have allowed for such claims. Smith has produced no communications between himself and others regarding the claims in this case, despite discovery requests seeking such information and documentation.

replacement workers are insufficient to actually provide insight into the specific tasks that each replacement worker performed.

Accordingly, Smith has not met his burden to show that class-wide adjudication is a superior method for the claims of the uninterested putative class members, and the R&R erred in concluding otherwise.

## IV. CONCLUSION

For the foregoing reasons, the Court should reject the Magistrate Judge's Report and Recommendation and deny Plaintiff's Motion for Class Certification.

Dated: May 24, 2022

Respectfully submitted,

*s/ Theodore A. Schroeder*
Theodore A. Schroeder, PA ID No. 80559
tschroeder@littler.com
Joshua C. Vaughn, PA ID No. 203040
jvaughn@littler.com
Katelyn W. McCombs, PA ID No. 323746
kmccombs@littler.com
Taylor N. Brailey, PA ID No. 324308
tbrailey@littler.com

LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
Ph: (412) 201-7624 / 7677 / 7641 / 7657
Fax: (412) 785-2333

*Attorneys for Defendant*

11

## CERTIFICATE OF SERVICE

      I hereby certify that on May 24, 2022 a true and correct copy of the foregoing Defendant's Brief in Support of Objections to the Magistrate Judge's Report and Recommendation on Plaintiff's Motion for Class Certification was served and filed using the Western District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Sarah R. Schalman-Bergen, Esq.
ssb@llrlaw.com
Krysten Connon, Esq.
kconnon@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116

Shanon J. Carson, Esq.
scarson@bm.net
Alexandra K. Piazza, Esq.
apiazza@bm.net
Michaela Wallin, Esq.
mwallin@bm.net
BERGER MONTAGUE P.C.
1818 Market Street, Suite 3600
Philadelphia, PA 19103

Michael K. Yarnoff, Esq.
myarnoff@kehoelawfirm.com
KEHOE LAW FIRM
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1020
Philadelphia, PA 19102

Joseph H. Chivers, Esq.
jchivers@employmentrightsgroup.com
THE EMPLOYMENT RIGHTS GROUP
100 First Avenue, Suite 650
Pittsburgh, PA 15222

                          By: */s/ Theodore A. Schroeder*

4895-7439-4912.4 / 094523-1002