# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RALPH SMITH, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**STROM ENGINEERING CORPORATION,**<br><br>**Defendant.** | **CIVIL ACTION NO.: 2:19-cv-00147-MRH-PLD**<br><br>**CLASS ACTION**<br><br>**ELECTRONICALLY FILED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION TO STRIKE THE REPORT AND TESTIMONY OF [DR.] ERIN HATTON, PH.D.**

**TABLE OF CONTENTS**

I. CONTENTS

II. INTRODUCTION ................................................................................................... 1

III. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................. 3

IV. LEGAL STANDARD FOR DISTRICT COURT REVIEW OF MAGISTRATE REPORT AND RECOMMENDATION ................................................. 5

V. ARGUMENT ........................................................................................................... 6

    A. The *Daubert* R&R Correctly Held that Dr. Hatton Is Qualified to Offer Expert Testimony ........................................................................................ 6

    B. The *Daubert* R&R Correctly Held that Dr. Hatton's Expert Testimony is Reliable ........................................................................................................ 7

        1. Dr. Hatton's Report Comports with Rule 26(a)'s Requirements ................................................................................................... 8

        2. The *Daubert* R&R Properly Applies the Applicable Law to Evaluate Dr. Hatton's Report and Properly Found it Reliable ................... 9

    C. The *Daubert* R&R Correctly Held that Dr. Hatton's Expert Testimony Is Helpful to the Jury ..................................................................................... 12

        1. Strom's Arguments Concerning the Employment Agreements At Issue Directly Contradict Its Prior Representations ............................. 13

        2. Dr. Hatton's Testimony Provides Context Outside Common Knowledge, Which Cannot be Supplanted by Testimony from Strom ........................................................................................................ 14

VI. CONCLUSION ..................................................................................................... 15

## II. INTRODUCTION

Plaintiff submitted the Expert Report of Dr. Erin Hatton in connection with his Motion for Class Certification to provide the trier of fact with background and context on the specialized industry of strike staffing. ECF 69, 69-10. Strom challenged the admissibility of this expert evidence. ECF 74. On April 20, 2022, Magistrate Judge Dodge issued a Report and Recommendation, ECF 91 ("*Daubert* R&R"), holding that Dr. Hatton's testimony satisfies the standard set out in *Daubert*, as Dr. Hatton is qualified as an expert, and her testimony is reliable, fits this case, and will aid the jury. On May 4, 2022, Strom filed objections to the *Daubert* R&R. ECF 98 ("Objections"). Strom's objections should be overruled.

Judge Dodge's *Daubert* R&R is well-reasoned and logically sound, and is certainly not "clearly erroneous" or "contrary to law" – the legal standard to sustain Strom's objections. LCvR 72(C)(2). As described at length in Plaintiff's Opposition to Strom's Motion to Strike, ECF 87, ("*Daubert* Opposition"), Dr. Hatton is a professor, trained sociologist and an expert in the field of work and labor, specifically in the use of temporary labor. She is a published author of numerous books and articles on the subjects of work and temporary labor, including some of the only peer-reviewed research on the strike staffing industry at issue in this litigation.

As Judge Dodge concluded, Dr. Hatton's testimony contains the appropriate indicia of reliability required for expert testimony.[1] Further, Judge Dodge correctly found that Dr. Hatton's proposed testimony is sufficiently tied to the facts of the case, so that it "fits" the dispute and will assist the trier of fact.[2] As Judge Dodge held, "expert testimony about the purpose of the services

---

[1] Specifically, Judge Dodge held that "Dr. Hatton, an academic who has substantial expertise in the field of labor and strike staffing, reviewed and relied on a significant body of research as well as specific information related to the facts of this case in reaching her conclusions. This represents a sufficient methodology for the opinions she expresses. Moreover, as her report reveals, her opinions are based on good grounds, that is, facts and data relating to the history and purpose of strike staffing agencies and the matters in dispute here." *Daubert* R&R at 6-9.
[2] Judge Dodge held that "Dr. Hatton's testimony regarding the strike staffing industry, the essential elements of the business of strike staffing agencies, and the purpose and manner by which such agencies, including Strom, regulate

1

provided by Strom and the procedures employed to achieve this purpose would assist the trier of fact in understanding the evidence and determining whether Strom is liable to compensate its temporary workers for the time commuting and crossing the picket line." *Id.* at 12.

Notably, Strom does not object to the Magistrate Judge's determination that Dr. Hatton is qualified to serve as an expert on strike staffing agencies and their control of their workers. Nor does Strom identify any controlling law that it claims the Magistrate Judge failed to consider. Instead, Strom contends that the sound reasoning of Judge Dodge should be overturned as clearly erroneous based on the same arguments Strom raised in its opening brief.

Strom first argues that Dr. Hatton's testimony is not reliable because it does not satisfy certain *Daubert* factors identified by Strom – factors that, as the *Daubert* R&R explains, are not required. *See Daubert* R&R at 9-10. Strom also argues that Dr. Hatton's testimony will not aid the trier of fact because the Court should exclusively consider the content of an employment agreement between replacement workers ("RW") and Strom – despite Strom offering no authority to support this position and contradictorily disputing the existence of any such agreement in its opposition to Plaintiffs' Motion for Class Certification. Finally, Strom argues that Dr. Hatton's report is not helpful to the trier of fact because it "contains no useful information" beyond what is covered by Strom witnesses– despite the unique nature of this industry and Strom's clear interest in disproving the allegations in this case through its own witness testimony and representations by its attorneys.

Judge Dodge's *Daubert* R&R is correct and consistent with governing case law. Rule 702 has a "liberal policy of admissibility," *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008), and "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory

---

and control traveling to and crossing picket lines by replacement workers, including how this may apply to the facts in this case, is not information that is commonly known. These opinions are relevant to Smith's claim that the replacement workers are entitled to be compensated for the time periods involved in transportation to and from ATI and crossing the picket line." *Id.* at 11.

Comm. Notes (2000). Courts routinely permit experts on an industry to explain the intricacies, regulations, and/or customs of a specialized industry and to apply their industry knowledge to the facts of the case, just as Dr. Hatton does here. Importantly, Rule 702 does not require the party proffering the expert to demonstrate the "correctness" of the expert's opinion. *In re Paoli R.R. Yard PCB Litig.,* 916 F.2d 829, 744 (3d Cir.1990). Indeed, "[a] judge will often think that an expert has good grounds to hold the opinion . . . even though the judge thinks the opinion otherwise incorrect." *Id*. The standard for fitness is "not that high" but "higher than bare relevance." *Paoli*, 35 F.3d at 745.

Plaintiff has easily satisfied his burden by a preponderance of evidence that Dr. Hatton's qualifications and opinions comply with Federal Rule of Evidence 702.

**III.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

This matter was originally filed in this Court on July 10, 2017. *Smith v. Allegheny Tech., Inc.*, No. 2:17-cv-0911-MRH-RCM, ECF 1 (W.D. Pa.). The original Complaint, including its subsequent amendments, plausibly alleges that Strom failed to pay its RWs for all time worked – namely time spent traveling to and across picket lines during the 2015-2016 lockout at ATI – in violation of the PMWA. *Id. See also* ECF No. 1, 4; *see Smith v. Allegheny Techs., Inc.*, 754 Fed. Appx. 136 (3d Cir. 2018) ("*Smith* I"); *Smith II*, 2019 WL 12363207 (adopted as opinion of the district court, at ECF No. 26).

The case proceeded to discovery. On June 16, 2021, Plaintiff disclosed Dr. Erin Hatton as an expert witness. On September 9, 2021, Dr. Hatton produced her expert report. *See* Ex. 10.[3] [Expert Report]. Strom did not designate an expert for rebuttal or other purposes. On October 8, 2021, Strom served a subpoena for deposition and documents on Dr. Hatton. Strom deposed Dr. Hatton on October 22, 2021.

---

[3] Plaintiff utilizes and continues the same numbering system as employed in connection with his briefing on the Motion for Class Certification and *Daubert* briefing. An index of exhibits is docketed at ECF 88.

On December 4, 2021, Strom filed a motion challenging Dr. Hatton's testimony under *Daubert*. ECF 74. On January 7, 2022, Plaintiff submitted an opposition. ECF 87. The opposition contains a lengthy description of Dr. Hatton's qualifications, the nature of her expert report, and information about her prior relevant research at pages 5-13, which Plaintiff incorporates herein by reference. On January 27, 2022, the Court held oral argument. ECF 89. *See* Ex. 90 (Jan. 27, 2022 Hearing Transcript). Judge Dodge issued her *Daubert* R&R on April 20, 2022. *Id.* Strom filed its objections on May 4, 2022. ECF 93.

The *Daubert* R&R recommended that Strom's Motion to Strike be denied. ECF No. 91. Judge Dodge found that Dr. Hatton is qualified to opine about the labor issues in this case in light of her significant experience and research in the issues of work and labor, as well as strike staffing in particular. Judge Dodge found "Strom's suggestion that a professor with significant expertise and research in labor issues cannot opine about the labor issues in this case" to be "singularly lacking in merit" and recommended that this "position should be rejected." *Daubert* R&R at 6.

The *Daubert* R&R also interrogated the reliability of Dr. Hatton's opinions and found Dr. Hatton's conclusions to be supported by good grounds. In doing so, Judge Dodge rejected Strom's assertions that Dr. Hatton's report should be excluded because it was not based on sufficient facts and data and did not put forward a specific methodology. Judge Dodge instead found that Dr. Hatton's report "relied on a significant body of research as well as specific information related to the facts of this case in reaching her conclusions" and that this "represents a sufficient methodology for the opinions she expresses," in which she applied her expertise in the area of work and labor to provide context on the history and role of strike staffing agencies and evaluated whether the facts in this case were consistent with her research and knowledge of the industry. *Id.* at 6-9.

4

Judge Dodge further rejected Strom's complaints that Dr. Hatton "conducted no tests, interviews, first-hand observations, or statistical analyses, and failed to apply any research methods. . . to the specific facts of this case." Motion to Strike at 10-11. Judge Dodge considered each of the *Daubert* factors that Strom raised and found them to be unpersuasive in evaluating the reliability of Dr. Hatton's report, noting that application of those factors "is neither necessary nor appropriate" "to assess the methodology of an expert who has expertise regarding customs and practices in a particular industry." *Daubert* R&R at 8-10.

Judge Dodge also extensively analyzed the question of "fit" – whether Dr. Hatton's report would help the trier of fact to understand the evidence or to determine a fact in issue. Judge Dodge correctly found that "Dr. Hatton's testimony regarding the strike staffing industry, the essential elements of the business of strike staffing agencies, and the purpose and manner by which such agencies, including Strom, regulate and control traveling to and crossing picket lines by replacement workers . . . is not information that is commonly known" and that this information is "relevant to Smith's claim that the replacement workers are entitled to be compensated for the time periods involved in transportation to and from ATI and crossing the picket line." *Id*. at 11. Judge Dodge concluded that, "[a]s such, expert testimony about the purpose of the services provided by Strom and the procedures employed to achieve this purpose would assist the trier of fact in understanding the evidence and determining whether Strom is liable to compensate its temporary workers for the time commuting and crossing the picket line." *Id.* at 12.

### IV. LEGAL STANDARD FOR DISTRICT COURT REVIEW OF MAGISTRATE REPORT AND RECOMMENDATION

As Strom concedes in its Objections, a *Daubert* motion to exclude testimony presents a non-dispositive matter, and objections to a Magistrate Judge's recommendation on a non-

5

dispositive motion are subject to a "clearly erroneous and contrary to law" standard of review.[4]

Under a "clearly erroneous" standard, the appellate court will only set aside factual findings when it is "left with the definite and firm conviction that a mistake has been committed." *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir. 2007) (internal quotation marks omitted). An appellate court thus must "accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (internal quotation marks omitted). A Magistrate Judge's order is contrary to law when she "has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins.*, Co., 237 F.R.D. 545, 548 (D.N.J. 2006).[5]

## V. ARGUMENT

### A. The *Daubert* R&R Correctly Held that Dr. Hatton Is Qualified to Offer Expert Testimony

Strom does not object to Judge Dodge's finding that Dr. Hatton is qualified to provide expert testimony on the nature of strike staffing agencies.[6] As Judge Dodge held: "[i]ndeed, Strom's suggestion that a professor with significant expertise and research in labor issues cannot opine about the labor issues in this case is singularly lacking in merit." *Daubert* R&R at 6.

As set forth at length in Plaintiff's original Opposition, Dr. Hatton is a renowned scholar on the in the field of work and labor, with a special focus on temporary workers. *See* Opposition

---

[4] *Masimo Corp. v. Philips Electronic N. Am. Corp.*, 62 F. Supp. 3d 368 (D. Del. 2014); *see also* Objections at Section II; 28 U.S.C. 636(b)(1)(A); Fed. R. Civ. P. 72(a); LCvR 72(C)(2); *Kenny v. United States*, 489 F. App'x 628, 630, n. 2 (3d Cir. 2012).

[5] The *Daubert* R&R accurately and succinctly describes the relevant legal standard for a *Daubert* challenge, and Strom does not meaningfully suggest that Judge Dodge misinterpreted or misapplied the applicable law. Plaintiff incorporates by reference his Legal Standard Section as set forth in his Opposition, ECF 87 at 13-16, as well as the authorities discussed herein.

[6] In a footnote, however, Strom states: "As set forth in Strom's Brief in Support of its Motion to Strike Dr. Hatton's testimony, Strom disputes that Dr. Hatton is qualified to be presented as an expert in this matter." Objections at n. 4. Strom made no specific objections on this point and there is no clear error in the R&R's findings that Dr. Hatton is qualified.

at Section II(B) and Section IV(A). Her prior research on the strike staffing industry was published in a preeminent labor journal, and her published works are peer-reviewed.[7] Her qualifications more than readily satisfy the Third Circuit's standard of having more knowledge than "the average layman." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

Moreover, Dr. Hatton's qualifications speak to the reliability of her opinions. Formal training shows that a proposed expert adheres to the intellectual rigor that characterizes the field, while peer-reviewed publications demonstrate an acceptance by the field that the work of the proposed expert displays "at least the minimal criteria" of intellectual rigor required in that field. *Daubert v Merrell Dow Pharm*, 43 F3d 1311, 1318 (9th Cir 1995) (on remand) ("*Daubert* II"). Judge Dodge's finding on this point is not clearly erroneous or contrary to law.

> **B.    The *Daubert* R&R Correctly Held that Dr. Hatton's Expert Testimony is Reliable**

Strom's objection to the *Daubert* R&R's findings that Dr. Hatton's Expert Testimony is reliable centers entirely on the same unsupported assertion it made in its opening Motion to Strike: that "[Dr. Hatton] did not follow any clearly defined methodology in rendering her opinions." Mot. to Strike at 6-12. As the *Daubert* R&R correctly held, this assertion is wrong. Strom has studiously ignored the methodology that Dr. Hatton used in her research and the application of her research to the facts of this case, instead applying inapposite criterion to the work of a social scientist. Strom does not provide any meaningful critique of the qualitative research methods that were deemed fit for publication in what is widely regarded as the preeminent labor journal in the country.[8] It does not present any expert or even cite to a single source critiquing the use of content analysis or

---

[7] *Temporary Weapons: Employers' Use of Temps against Organized Labor*, 67(1) CORNELL I.L.R. 86 (2014), ECF No. 88-14, Ex. 84.
[8] *See* ECF No. 88-19, Ex. 89 (January 6, 2022 letter from Editors of CORNELL UNIVERSITY INDUSTRIAL AND LABOR RELATIONS, describing rigorous review process, in which 10% of all submitted papers are selected for publication).

7

typologies – the methods used by Dr. Hatton. Judge Dodge's R&R correctly rejected such arguments and Strom has made no showing that this was clearly erroneous or contrary to law.

### 1. Dr. Hatton's Report Comports with Rule 26(a)'s Requirements

Strom asserts (for the first time) that Dr. Hatton's report runs afoul of Rule 26(a)'s requirements that an expert report contain a "complete statement of all opinions the witness will express and the basis and reasons for them" because it does not use the words "typology"" or "content analysis." This complaint elevates form over function and is not in line with the purpose and requirements behind Rule 26(a). Courts in this Circuit have recognized that the requirements set out in Rule26(a)(2)(B)(i) are designed "so that an opposing party has an opportunity to fully evaluate the expert's opinion 'in order to avoid an ambush at trial" *Muhsin v. Pac. Cycle, Inc.*, No. 10-CV-060, 2012 WL 2062396, at *3 (D.V.I. June 8, 2012) or "unfair surprise." *Bishop v. Wexford Health Sources, Inc.*, No. 1:17-CV-60, 2019 WL 6311491, at *7 (W.D. Pa. Nov. 25, 2019). "[A]n expert opinion must set forth facts and, in doing so, outline a line of reasoning arising from a logical foundation." *Mushin*, 2012 WL 2062396, at *3 (internal quotation marks omitted).

Here, there can be no surprise concerning the methodology and logical reasoning underpinning Dr. Hatton's 17 page report, which does precisely what the rule requires. Dr. Hatton applied her expertise in labor and work, including her prior research on the strike-staffing industry in particular, to explain the history, background, and purpose of the strike-staffing industry and role of temporary strike staffing agencies and the RWs that they employ during a labor dispute. She then evaluated whether Strom's engagement with ATI and the work performed by RWs during ATI's lockout of its union workforce was consistent with the research Dr. Hatton had done regarding similar workers and businesses in the strike-staffing industry. As described at length in Plaintiff's Opposition at Section IV(B), Dr. Hatton's research follows longstanding and widely recognized research methodology utilized in her field. Dr. Hatton testified at length about her

8

methodology during her deposition. *See, e.g.,* Ex. 83 [Hatton Dep.] at 26:22-83:24.

Dr Hatton's Report discusses findings from her past research to provide context in this case and uses that research as a basis to apply its reasoning to the facts alleged by Plaintiffs. Strom cannot claim surprise simply because Dr. Hatton provided additional information to elaborate on the methodology of the research on which her Report is explicitly based.[9] "Rule 26(a) serves to ensure that expert reports [ ] include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Mushin*, 2012 WL 2062396, at *3 (internal quotation marks omitted). Dr Hatton's report readily satisfies this requirement.

## 2. The *Daubert* R&R Properly Applies the Applicable Law to Evaluate Dr. Hatton's Report and Properly Found it Reliable

Nor do Strom's objections to the *Daubert* R&R identify any legal standard that was misapplied. Strom suggests that Judge Dodge's analysis was off-base because none of the authority cited in the *Daubert* R&R "overturns the Supreme Court's ruling that the trial judge has an obligation to ensure that all expert testimony proffered under Federal Rule of Evidence 702 is 'not only relevant, but reliable.'" Objections at 5. But, at no point did Judge Dodge suggest that the trial court was not to act as gatekeeper and ensure reliability of exert testimony. The *Daubert* R&R correctly cited Third Circuit precedent concerning the *Daubert* standard, including the factors enumerated under *Daubert* as well as the Third Circuit's guidance that "this list is non-exclusive and that each factor need not be applied in every case." *Daubert* R&R at 7-8 (quoting *Elcock*, 233 F.3d at 746). Judge Dodge properly concluded that the factors that Strom focused on were unpersuasive in light of the nature of the expert opinion offered. *Id*.

Strom previously argued that "Dr Hatton merely used her knowledge of the strike staffing

---

[9] *See Bishop*, 2019 WL 6311491, at *7 ("Although Rule 26 will not require verbatim consistency between the report and the expert's trial testimony, the expert's testimony must represent a reasonable synthesis and/or elaboration of the opinions contained in the expert's report.") (internal quotation marks omitted).

industry generally . . . as well as her understanding of picket lines generally . . . to make specific conclusions about Strom's business, picket line activity on the ATI Project, and to ultimately conclude that crossing picket lines was an 'essential component' of [RW's] jobs." Mot. to Strike at 10. But Courts routinely allow for precisely this kind of expert testimony, permitting experts to explain to the jury the intricacies, regulations, and/or customs of a specialized industry and to apply their expert knowledge of that industry to the facts of the case.[10]

Moreover, as Judge Dodge correctly noted, courts admitting expert testimony concerning the operations of an industry do not demand that such experts put forth a "testable theory or methodology" to support this opinion, as their expertise in an industry is sufficient basis for their opinion.[11] Courts have found that application of traditional *Daubert* factors to expert findings concerning "customs and practices" in an industry is "both illogical and irrelevant," *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 2012 WL 12929813, at *5 (M.D. Pa. July 23, 2012), and "stricter than required." *Cantor v. Perelman*, 2006 WL 3462596, at *8 (D. Del. Nov. 30, 2006).

Judge Dodge cited *Zheng v. Liberty Apparel Co.*, 556 F. Supp. 2d 284, 291, 292 (S.D. NY

---

[10] *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (expert's testimony regarding "[t]he customs and business practices in the securities industry at the time the parties entered into the Agreement provides an important context which will aid the jury in determining whether [Plaintiff] had the requisite scienter at the time to evade the registration requirements"). *See also First Nat'l State Bank of N.J. v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (expert properly permitted "to provide the jury with information on bank customs and to assist the trier of fact with bank and industry practices"); *Grill v. Aversa*, No. 1:12-CV-120, 2014 WL 4784150, at *3 (M.D. Pa. Sept. 22, 2014) (experts' testimony may be admitted where the witnesses were to "testify, in general terms, based upon their experience regarding industry practices and customs" and would "then provide a factual, descriptive narrative of defendants' conduct in light of these customs and practices"); *Dominion Res. SVC, Inc. v. Alstom Power, Inc.*, No. 3:16-cv-00544, 2018 WL 3752878, at *5 (D. Conn. Aug. 8, 2018) (expert's testimony admissible regarding "common industry understanding", where the expert's "experience covers 'the history, structure, application, and construction of the [industry],'" as well as the "operation" of the industry and "industry custom and practice.").

[11] *Daubert* R&R at 8; *see also United States v. Davis*, 397 F.3d 173, 179 (3d Cir. 2005) (expert opinion was sufficiently reliable based solely on his years of experience); *Christoforetti v. Bally's Park Place, Inc.*, No. 12-CV-4687, 2021 WL 3879074, at *6–7 (D.N.J. Aug. 31, 2021) ( "the fact that [an expert] does not use a testable theory or methodology subject to peer review does not render his testimony unreliable under Rule 702. To the contrary, his vast experience in the . . . industry and the publications he references supports the reliability of his opinion."); *Nationwide Life Ins. Co. v. Commw. Land Title Ins. Co.*, No. 05-CV-281, 2011 WL 204619, at *8 (E.D. Pa. Jan. 20, 2011) (expert was qualified to "testify as to the custom and trade usage of certain terms used within title insurance policies" based on his experience in and knowledge of the industry and that "[n]o further 'methodology' for his opinions is necessary").

10

2008), to illustrate this point. *See Daubert* R&R at 8. In that case, Plaintiffs relied on expert testimony from a professor of history who opined on custom and practice in the garment industry as well as the "impetus" or purpose behind the practice of piecework. The *Zheng* court found this testimony admissible because the expert "is qualified as an expert on the topic of labor practices in the garment industry based on his extensive publications on this subject, his educational background, and his occupation," and his testimony was "based on reliable historical data," and was "likely to assist the trier of fact in assessing 'industry custom and historical practice'." *Id.* (internal citations omitted).

The parallels here are striking. As in *Zheng*, Dr. Hatton is a professor who has studied work and labor, as well as labor practices in the strike-staffing industry in particular. Dr. Hatton based her testimony concerning practices in the strike staffing industry on reliable research concerning the history of the strike-staffing industry. And Judge Dodge found Dr. Hatton's testimony helpful to the trier of fact "in understanding the evidence and determining whether Strom is liable to compensate its temporary workers for the time commuting and crossing the picket line." *Daubert* R&R at 12.

Strom's complaint that Dr. Hatton's testimony is not reliable because she "conducted no tests, interviews, first-hand observations, or statistical analyses, and failed to apply any research methods (let alone acceptable ones) to the specific facts of this case" (Mot. to Strike at 10-11) is similarly off base. Courts have held that expert testimony is properly admitted where it presents past research performed by the expert and applies it to the facts of the case – *precisely* what Dr. Hatton does in the Expert Report.[12] Strom did not object that Dr. Hatton is a qualified expert,

---

[12] *See, e.g., Gerald v. R.J. Reynolds Tobacco Co.*, No. ST-10-CV-631, 2018 WL 4062154, at *10 (V.I. Super. Ct. June 12, 2018) (rejecting defendants' argument that expert's testimony was "not the product of a reliable methodology . . . [because the expert] ha[d]n't conducted independent scientific studies or experiments and ha[d] considered only a small fraction of the universe of information available to him in reaching his conclusions," and holding that "[t]he examination of historical industry documents by an eminently qualified historian is similarly an acceptable and reliable methodology for use in establishing [ facts about the industry]"); *In re Suboxone Antitrust Litig.*, No. 13-MD-2445, 2020 WL 6887885, at *13-16 (E.D. Pa. Nov. 24, 2020) (approving expert report that offered opinions based on marketing studies that were performed 7-16 years previously); *D.B. v. Orange Cty., Fla.*, No. 6:13-cv-434 2014 WL 4655739, at *1-2 (M.D. Fla. Sept. 17, 2014) (professor of sociology who submitted an expert report that described "three major research projects related to corrections policy with which she was involved" was qualified to "opine on

11

another factor that weighs in favor of the reliability of her testimony. *See*, *e.g.*, *Elcock*, 233 F.3d at 747-48 (listing "the qualifications of the expert witness" as one of the non-exclusive *Daubert* factors courts must take into account when assessing reliability).

Finally, despite Strom's efforts to rehash its prior reliability arguments and mischaracterize the R&R's findings, ultimately there is no methodology that Strom would find sufficient to support expert testimony concerning the strike staffing industry under its mistaken reading of *Daubert*. Indeed, at oral argument, Judge Dodge asked Strom's counsel whether Strom had "a position regarding what methodology would be appropriate here." Oral Argument Transcript at 11:11-12. Strom's counsel tellingly responded that "there's not one here that would satisfy the standard." *Id* at 11:25-12:1. Judge Dodge was correct to reject Strom's efforts to use irrelevant and inapplicable factors in order to cast Dr. Hatton's testimony as unreliable, and Strom has put forward no showing that this decision was contrary to law or clearly erroneous.

## C. The *Daubert* R&R Correctly Held that Dr. Hatton's Expert Testimony Is Helpful to the Jury

Next, Strom objects to the R&R's finding that Dr. Hatton's testimony is helpful to the trier of fact as "clearly erroneous." It is not. To determine whether an expert's testimony "fits" the proceedings, this Court asks whether it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 835 (3d Cir. 2020).

Judge Dodge correctly found that Dr. Hatton's testimony will be helpful to the trier of fact, as her testimony concerns "the strike staffing industry, the essential elements of the business of

---

the policies and procedures utilized" in correctional facilities at issue); *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 940 (N.D. Cal. 2010) (expert "professor of history and American studies" was qualified and offered credible opinion testimony "on social history," specifically about "the widespread private and public discrimination faced by gays and lesbians . . . and the ways in which the Proposition 8 campaign echoes that discrimination," noting that the expert had "authored or edited books on the subject of gay and lesbian history").

12

strike staffing agencies, and the purpose and manner by which such agencies, including Strom, regulate and control traveling to and crossing picket lines by replacement workers, including how this may apply to the facts in this case, is not information that is commonly known" and "[t]hese opinions are relevant to Smith's claim." *Daubert* R&R at 11-12. This finding is well supported; Dr. Hatton's testimony easily surpasses the "higher than bare relevance" standard for admissibility under *Daubert's* gatekeeping function. *See Paoli*, 35 F.3d at 745.

Strom nevertheless objects on two apparent grounds: First, Strom argues that Dr. Hatton's testimony will not help the trier of fact because "the ultimate legal issue" involves examining the "employment agreement" and any other evidence is "beyond the scope of what a factfinder will be asked to determine at trial in this matter." Objections at 8. Second, Strom argues that Dr. Hatton simply provides testimony concerning "the 'why' behind Strom's actions" and Dr. Hatton is not better positioned than the jury or Strom's witnesses to provide insight on this issue. *Id.* Neither argument warrants overturning the conclusions in the *Daubert* R&R.

      **1.**    **Strom's Arguments Concerning the Employment Agreements At Issue Directly Contradict Its Prior Representations**

Strom's first argument – that Dr. Hatton's testimony is not necessary because the factfinder need only look at the employment agreements at issue in the case -- directly contradicts arguments Strom made in opposition to class certification, the same motion Plaintiff seeks to use Dr. Hatton's testimony to support. In prior briefing, Strom argued that Plaintiff cannot rely on the Project Assignment Agreement and the Picket Line Agreement [Exs. 1 and 2, respectively] that it required all RWs to sign as a term of condition of employment because "the record is clear that there was no applicable agreement that defined the job duties of the replacement worker." ECF 73 at 19;

13

ECF 99 at 4 and 8-9.[13] Now Strom says those are the only documents the Court should examine.

Strom cannot talk out of both sides of its mouth. While the agreements may very well be sufficient for the Court to grant summary judgment in Plaintiff's favor on liability, they are in no way the ***only*** sources of evidence that may be considered. The Third Circuit found that Plaintiffs' allegations were sufficient to state a claim despite the fact that Plaintiffs' "employment agreements [were] not in the record." *Smith I*, 754 F. App'x at 141. Dr. Hatton's testimony will provide context to the sources of evidence proffered, including but not limited to the two employment agreements.

### 2. Dr. Hatton's Testimony Provides Context Outside Common Knowledge, Which Cannot be Supplanted by Testimony from Strom

Strom argues, in the alternative, that Judge Dodge's *Daubert* R&R is clearly erroneous because Dr. Hatton's testimony is within the common knowledge of jurors and because she is not better situated to provide insights on the intent and purpose behind Strom's actions than Strom and its representatives. Objections at 8. Strom's argument stubbornly mischaracterizes the expert testimony offered by Dr. Hatton, who provides extensive background and history on the strike staffing industry, and applies her research to the facts of this case.

As Judge Dodge correctly determined, the historical context that Dr. Hatton provides is not within the common knowledge of jurors and cannot be made by general observation. The strike staffing industry is not widely known, and intentionally so, given the great stigma associated with crossing a picket line. It is for precisely this reason that Dr. Hatton's testimony is important evidence for the trier of fact to consider. Labor disputes are highly contentious and provoke a variety of feelings for all parties, regardless of the side in which they are on, or their level of

---

[13] Strom argues that "[t]he two written documents Smith seeks to rely on are not dispositive of his own claims" and that those two agreements – specifically the Project Assignment Agreement and the Picket Line Agreement … "[do] not suffice to supplant the Court's requirement to look to evidence outside of those written documents in order to determine whether Smith's and the replacement workers' commute time was part of their job." ECF. 73 at 19.; *see also* ECF 99 at 9 ("An evaluation of Smith's job duties . . . cannot be pared down to generalized agreements").

14

involvement.[14] It may be tempting for a trier of fact to rely on his or her gut instinct (whatever that may be), or to supplant the evidence in the case with his or her own knowledge and/or experience. Dr. Hatton's testimony provides reliable, well-researched evidence, and which can be considered with the other evidence in the case. Her testimony goes directly to the central questions of the case relevant to all RWs, although, as the *Daubert* R&R recognizes, it does not seek to supplant the role of the jury by opining on the ultimate issue.

Nor is the testimony of Strom's witnesses a viable replacement for Dr. Hatton's testimony, and Plaintiff is not obligated to rely solely on such hostile witnesses to support his case. Dr. Hatton's testimony is helpful when evaluating the credibility of the testimony of Strom's management witnesses, who have an incentive to portray their company's actions, objectives and motives in a manner that supports their defense of the case. Strom's suggestion that Dr. Hatton "admitted" that Strom witnesses were better suited than her to provide testimony is a mischaracterization and cherry-picking of selective quotes in her deposition testimony.[15] Ultimately, as Judge Dodge held, whether and how much a trier of fact credits Dr. Hatton's testimony goes to the weight, not the admissibility of her evidence. The proposed expert testimony squarely fits the case.

## VI.   CONCLUSION

Plaintiff respectfully requests the Court overrule Strom's objections to the *Daubert* R&R motion to strike the expert testimony of Dr. Hatton.

---

[14] *See, e.g.,* Ex. 73 [Waters Dep. 84:10-89:4] ("Q: What do you mean by the situation could be emotionally charged? A: Well there are people that are out of work, and they're fighting for their ethos. So people get emotional. You know, people have mortgages to pay.").

[15] *See, e.g.,* Ex. 83 [Hatton Dep.] at 106:12-24 (Q: How do you know why companies do what they do? A: Well, I can – based on my professional – based on my research into this industry and how companies have used temp agencies and strike staffing agencies in the context of labor disputes, and by analyzing the ways that they have done so, I can gain an understanding into [why] they do so. Of course, you could ask the companies themselves, but I've been asked to use my professional assessment of this industry to explain how I understand why they do so.").

Dated: June 10, 2022

Respectfully submitted,

s/ *Sarah R. Schalman-Bergen*
Sarah R. Schalman-Bergen (Pa. Bar ID 206211)
Krysten Connon*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Direct: (267) 256-9973
Main: (617) 994-5800
Fax: (617) 994-5801
ssb@llrlaw.com
kconnon@llrlaw.com

Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4620
mwallin@bm.net

Joseph H. Chivers
The Employment Rights Group
100 First Avenue, Suite 650
Pittsburgh, Pennsylvania 15222
jchivers@employmentrightsgroup.com

Michael K. Yarnoff*
KEHOE LAW FIRM
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1020
Philadelphia, PA 19102
Telephone/Fax: (215) 792-6676
myarnoff@kehoelawfirm.com

**Pro hac vice* to be filed*

*Attorneys for Plaintiff*

16

## CERTIFICATE OF SERVICE

I certify that, on June 10, 2022 the foregoing was served electronically via CM/ECF, which will send a notice of electronic filing to all parties of record.

/s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen

*Counsel for Plaintiff*